**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THOMAS O. PAGETT,

        Plaintiff,

v.

EATON CORPORATION,

        Defendant.

_____/

CASE NO. 04-72834
HON. LAWRENCE P. ZATKOFF
MAGISTRATE JUDGE MONA K. MAJZOUB

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse, in the City of Port Huron, State of Michigan, on September 2, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff has responded and Defendant has replied to the response. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

Plaintiff was employed as a machinist in the model shop of Defendant's Automotive Advanced Product Development ("AAPD") Department from October 24, 1977 until January 30,

2004. In 1997 Plaintiff contracted bladder cancer and had surgery to remove the cancer. During this time Plaintiff was granted a five month leave of absence. In 1998 Plaintiff was diagnosed with cancer of the lymph nodes, and in 2000 he was diagnosed with brain cancer. Plaintiff underwent radiation treatment, which reduced the size of the tumors. Plaintiff has not experienced a relapse, and Plaintiff's doctors have said the cancer is in a waiting mode. In 2001 Plaintiff was offered a supervisory role in the model shop, which he declined. The position was then accepted by the other machinist, Dave Prebola.

In January 2003 Prebola was called up for military duty, and Plaintiff assumed Prebola's duties during his absence. In June 2003 Larry Bennett assumed responsibility for the AAPD department. Bennett received complaints from the AAPD chief engineer, Bill Eybergen, regarding Plaintiff's performance. Eybergen complained that an unacceptable amount of work was being farmed out of the model shop, and that Plaintiff was spending too much time in an office at a desk. Ed Bedoun, Plaintiff's manager, informed Bennett that Plaintiff had the desk because of a previous illness. They did not discuss the specific nature of Plaintiff's illness, and Bennett was unaware that Plaintiff had cancer. Bennett asked if there were any limits on Plaintiff's ability to work, and Bedoun said there were none.

In late 2003 Bennett was informed that the 2004 AAPD Department budget was being reduced by 25%. Bennett then created a project analysis to determine staffing needs for the AAPD Department under four different scenarios. After receiving input from other employees, Bennet determined that only one machinist would be needed under all four scenarios, and that Prebola should be retained because of his supervisory skills. Bennett decided to eliminate the positions of Plaintiff and Bedoun. Bennett then discussed the proposed reduction in force with

Carey Martin of the human resources department. Martin prepared a grid which rated all thirty-seven AAPD Department employees in four categories. Plaintiff's cumulative ranking was the second lowest. Martin was unaware of Plaintiff's cancer while preparing the grid. Plaintiff was terminated in January 2004, and has not been replaced: the model shop continues to employ only one machinist. A total of four AAPD Department employees were eventually laid off. Plaintiff was fifty seven years old at the time of his termination; Prebola, the remaining machinist, was forty nine.

In July 2004 Plaintiff brought suit asserting claims under the Americans with Disabilities Act ("ADA"), Age Discrimination in Employment Act ("ADEA"), Michigan Persons with Disabilities Civil Rights Act, and Michigan Elliott-Larsen Civil Rights Act. The Court dismissed the state law claims, leaving only the ADA and ADEA claims before the Court.

### III. LEGAL STANDARD

#### A. Summary Judgment

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

### B. Age Discrimination

The *McDonnell Douglas* framework is used to analyze an indirect age discrimination claim. *Hedrick v. Western Reserve Care Sys. and Forum Health*, 355 F.3d 444, 459 (6th Cir. 2004). The Supreme Court has described the process as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dept. of Cmmunity Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (citations omitted). To establish a prima facie case, a plaintiff must show: "(1) he was at least 40 years old at the time of

the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position, and (4) the successful applicant was substantially younger than the plaintiff." *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998).  When the plaintiff is terminated as a reduction in force, and not replaced, the plaintiff must also show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

### C. Disability Discrimination

To succeed on a claim under the ADA, the plaintiff must show that "1) he is an individual with a disability; 2) he is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and 3) he was discharged solely by reason of his handicap." *Monette v. Electronic Data Sys.*, 90 F.3d 1173, 1178 (6th Cir. 1996).  When a plaintiff uses indirect evidence to prove his claim, the *McDonnell Douglas* burden-shifting approach applies.  *Hedrick*, 355 F.3d at 453.  To establish a prima facie case in the context of disability discrimination, the plaintiff must show:

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Monette*, 90 F.3d at 1186.  The last element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Hopkins v. Electronic Data Sys.*, 196 F.3d 655, 660 (6th Cir. 1999).

## IV.  ANALYSIS

### A. Plaintiff's ADEA Claim

Since Plaintiff has not provided any direct evidence of age discrimination, the *McDonnell Douglas* framework applies.  *Hedrick*, 355 F.3d at 459.  Plaintiff has failed to establish a prima facie case of age discrimination under this analysis.  The first three elements are met: Plaintiff is over forty years old, was subjected to an adverse employment action, and was otherwise qualified for the position.[1]  However, since Plaintiff's termination resulted from a reduction in force, he cannot show that he was replaced by someone substantially younger than himself.  Plaintiff argues that he was in fact replaced by Prebola.  This argument is unconvincing.  Before the reduction in force, both Plaintiff and Prebola performed machinist duties; now Prebola performs all the machinist duties.  This is not a case where someone else has been assigned to Plaintiff's job; rather, Plaintiff's duties have been assigned to someone else.  The Sixth Circuit has held that "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties . . . ."  *Barnes*, 896 F.2d at 1465.[2]

Since Plaintiff was not replaced, he must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge

---

[1]Defendant claims Plaintiff was unqualified, based on Eybergen's complaints regarding Plaintiff's performance.  However, as Plaintiff has provided evidence supporting his qualifications, this issue must be resolved in Plaintiff's favor for purposes of summary judgment.

[2]In addition, it is possible that Prebola is not "substantially younger" than Plaintiff.  The Sixth Circuit has held that a difference of six years or less is not substantial as a matter of law.  *Grosjean v. First Energy Corp.* 349 F.3d 332, 340 (6th Cir. 1999).  The *Grosjean* court did not hold that differences greater than six years were necessarily substantial.  The court did note that eight years could be significant.  *Id.*  However, the court also noted that "[t]he overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case."  *Id.* at 338.  In this case, given that the age difference between Plaintiff and Prebola is only eight years, and Plaintiff has not produced *any* evidence indicating that his age was ever taken into consideration, it is likely that the eight year difference is not substantial.  However, the Court need not decide this issue.

for impermissible reasons." *Id.* However, Plaintiff has failed to offer any evidence suggesting he was terminated because of his age. Plaintiff has not claimed that any comments were ever made regarding his age, and has not produced any statistical evidence supporting his claim. Thus, Plaintiff has failed to establish a prima facie case, and his ADEA claim fails as a matter of law.

Even assuming Plaintiff had been able to establish a prima facie case, Defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination. The budget for the AAPD Department was being reduced by 25%, and a reduction in force was necessary. Bennett determined that only one machinist was needed in the model shop, and Prebola was chosen based on his supervisory experience. Since Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's termination, Plaintiff must show pretext by producing "sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). Specifically, the *Manzer* court held that:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge."

*Id.* at 1084 (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993) (emphasis added)). Plaintiff has failed to show pretext by any one of the three methods. Plaintiff does not deny that the AAPD budget was cut by 25%.[3] Plaintiff does not deny that the

---

[3] Plaintiff dismisses the budget reduction rationale by arguing "[his] *removal made only a $100,000 dent in the budget*." Plaintiff's Response at 3 (emphasis in original). Plaintiff seems to be arguing that if a deficit cannot be eliminated in one fell swoop, no attempt should be made to deal with it at all. The Court finds this argument singularly unpersuasive.

7

model shop only required one machinist.  Plaintiff does not deny that the chief engineer, Eybergen, was unhappy with Plaintiff's performance.  At best, Plaintiff alleges there is some discrepancy regarding which other employees Plaintiff was compared to during the reduction in force analysis.  Plaintiff's Response at 3.  However, the Court finds this to be insufficient evidence of pretext.  Thus, Plaintiff's ADEA claim fails as a matter of law.

Furthermore, even if Plaintiff was able to demonstrate pretext, there still is absolutely no evidence that Plaintiff's age was ever taken into consideration.  The Sixth Circuit affirmed a grant of summary judgment in a similar situation:

> [T]he district court concluded that, even though Hedrick had established a prima facie case under the ADEA, and even if the district court assumed that Hedrick provided sufficient evidence to show that WRCS's asserted justification was false, Hedrick's evidence was insufficient to avoid summary judgment, and the Supreme Court in *Reeves* anticipated just such a scenario: "Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory."

*Hedrick*, 355 F.3d at 461 (citing *Reeves v. Sanderson Plumbing Products., Inc.*, 530 U.S. 133, 148 (2000)).  Plaintiff's case here is even weaker than in *Hedrick*, as Plaintiff has not even established a prima facie case.  Thus, Plaintiff's ADEA claim fails as a matter of law.

### B. Plaintiff's ADA Claim

Since Plaintiff has not provided any direct evidence of disability discrimination, the *McDonnell Douglas* framework applies.  *Hedrick*, 355 F.3d at 453.  Plaintiff has failed to establish a prima facie case of disability discrimination under this analysis.  Plaintiff fails the very first prong of the test: for purposes of the ADA, he is not "disabled."  As defined by the ADA, a disability is:

   (A) a physical or mental impairment that substantially limits one or more of the

      major life activities of such individual;
      (B) a record of such an impairment; or
      (C) being regarded as having such an impairment.

42 USCS § 12102(2). The EEOC has defined "substantially limits" to mean:

> i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 CFR § 1630.2(j)(1). Plaintiff claims that as a result of his cancer and treatments, he has "an inability to perform certain household chores and recreational activities, such as cutting the law (the slope affects his balance); climbing ladders, and flying aircraft (a past hobby)." Plaintiff's Response at 14. However, all of those activities have been held to not constitute "major life activities." *See Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 951 (7th Cir. 2000) (mowing the lawn is not a major life activity); *Otting v. J.C. Penney*, 223 F.3d 704, 710 (8th Cir. 2000) ("ladder-climbing is not a major life activity"); *Cannizzaro v. Neiman Marcus, Inc.*, 979 F. Supp. 465, 476 (N.D. Tex. 1997) (flying is not a major life activity). Since Plaintiff has not claimed that he is significantly impaired in the performance of any major life activities, he is not disabled for purposes of the ADA.

    Plaintiff also claims that Defendant regarded him as being disabled. However, as the Sixth Circuit has noted, proving this claim is "extraordinarily difficult." *Ross v. Campbell Soup Co.*, 273 F.3d 701, 709 (6th Cir. 2001) ("Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs."). Plaintiff has failed to show both that

Defendant thought he was disabled, and that his disability would prevent him from performing a broad class of jobs. The only piece of evidence that Plaintiff can point to is a meeting in 2003, where Bennett learned that Plaintiff sat at a desk because of a previous illness. Bennett claims that after learning there were no restrictions on Plaintiff's ability to do his job, he did not inquire further, and did not know that Plaintiff had cancer. Bennett Dep. at 213-16. Plaintiff has produced no evidence to contradict this claim. Plaintiff also stated that none of Defendant's employees ever made any negative comments about his health issues. Pagett Dep. at 84. In contrast, in a case where the plaintiff did provide sufficient evidence of discrimination, the defendant told the plaintiff "we can't have any more of this back thing," and wrote a memo that referred to the plaintiff as a "back case" and asked "[w]hen can we bring this problem person to a termination status?" *Ross*, 237 F.3d at 707. There has been no activity of that sort here; Plaintiff has provided no evidence that shows Defendant thought he was disabled, and that his disability prevented him from performing a broad class of jobs.

     Furthermore, Plaintiff cannot satisfy the fifth element of the prima facie case, which requires that the disabled person be replaced. *Monette*, 90 F.3d at 1186. As discussed above, Plaintiff was not replaced because his position was eliminated as a result of a reduction in force. The fifth element "may also be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Hopkins*, 196 F.3d 660. Plaintiff could possibly argue that Prebola, a non-disabled employee, was similarly situated and treated more favorably in the reduction in force. However, while both Plaintiff and Prebola were machinists, Prebola was also in a supervisory position, making him not similarly situated with Plaintiff. Thus, Plaintiff has failed to establish a prima facie case, and his ADA claim fails as a matter of law.

Even if Plaintiff were able to establish a prima facie case, Defendant has provided a legitimate, nondiscriminatory reason for Plaintiff's termination, as discussed above.  Plaintiff cannot demonstrate pretext regarding his ADA claim for the same reasons he cannot demonstrate pretext regarding his ADEA claim.

Plaintiff has failed to establish a prima facie case, and also failed to show that Defendant's reasons for his termination were pretextual.  Thus, his ADA claim fails as a matter of law.

## V. CONCLUSION

For the above reasons, the Court HEREBY GRANTS Defendant's Motion for Summary Judgment.  Plaintiff's Complaint is HEREBY DISMISSED with prejudice.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  September 2, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 2, 2005.

s/Marie E. Verlinde
Case Manager
(810) 984-3290